IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RYAN CHRISTOPHER CHEATHAM,

    **Plaintiff,**

    v.                                                  CASE NO. 25-3218-JWL

TIM EASLEY, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

    Plaintiff and state prisoner Ryan Christopher Cheatham filed this pro se civil action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff is currently incarcerated at El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas and he has been granted leave to proceed in forma pauperis. (Doc. 8.) Plaintiff was assessed an initial partial filing fee, which he has asked the Kansas Department of Corrections (KDOC) to forward from his inmate account. (*See* Doc. 13.) The information now before the Court reflects that the money has been debited from Plaintiff's account, although the Court has not yet received payment. *Id.*

    The Court therefore has begun the initial screening of this matter and has identified deficiencies in the complaint that leave this matter subject to dismissal in its entirety. The deficiencies are set forth below and Plaintiff will be granted time in which to file a complete and proper amended complaint that cures those deficiencies. Also before the Court is Plaintiff's motion for appointment of counsel. (Doc. 11.) Because the motion expressly seeks the appointment of counsel "after screening of [the] complaint," the Court will defer ruling on this motion until it has completed screening.

1

I.  **Nature of the Matter before the Court**

Although Plaintiff is now incarcerated at EDCF, his claims and the Defendants named in this action are related to Plaintiff's previous incarceration at Larned State Correctional Facility ("LSCF"). Plaintiff names as Defendants in this matter Kansas Secretary of Corrections Jeff Zmuda, Facility Management CMII Megan Davis, LSCF Classification Administrator (fnu)[1] Byrum, LSCF Unit-Team Manager Travis Getty, LSCF Deputy Warden Thomas Loomis, LSCF EAI staff members (fnu) Corey and Miranda Schmidt, Major (fnu) Graham at LSCF, and LSCF mental health provider (fnu) Uing. (Doc. 1, p. 1-2, 4-6.) As the background to this case, Plaintiff generally asserts that beginning September 4, 2024, all Defendants engaged in a conspiracy and violated his constitutional rights to privacy[2], to be free from cruel and unusual punishment, and to be afforded due process. *Id.* at 2.

As Count I, Plaintiff asserts "conspiracy." *Id.* at 7. As supporting facts for Count I, Plaintiff asserts that all Defendants enforced a policy that inmates who commit battery of a correctional officer must be placed in segregation for at least one year. *Id.* Plaintiff alleges that he was not informed of this policy until after he was placed in segregation on September 4, 2024, apparently as a result of committing battery of a correctional officer. *Id.* Plaintiff attended segregation review board, but Defendants Easley, Getty, Byrum, Corey, Schmidt, Uing, Graham, and Loomis, among others, decided not to release him from segregation. *Id.* Plaintiff further alleges that these individuals "had a meeting of the minds to enforce" the policy despite Defendant Zmuda remanding the relevant disciplinary action for clarification of the record. *Id.* at 3.

---

[1] In this context, "(fnu)" means "first name unknown."
[2] At no other point in the complaint does Plaintiff refer to the violation of his right to privacy.

Exhibits attached to the complaint reflect that on October 12, 2024, Plaintiff appealed the disciplinary decision of the hearing officer.[3] (Doc. 1-2.) On October 30, 2024, the appeal was remanded for clarification of the record and, on July 25, 2025, Defendant Davis reviewed the clarification and approved the hearing officer's decision. *Id.* Plaintiff now argues to this Court that the "[a]dministration still cannot provide any documentation of clarification of the record." (Doc. 1, p. 3.) He asserts that he was falsely told the disciplinary decision was final, he was not informed of the one-year-in-segregation policy until after he was placed in segregation, his procedural due process rights were violated, and he was treated differently than other inmates, in violation of the Equal Protection Clause. *Id.*

In Count II, Plaintiff asserts the violation of his procedural due process rights under the Fourteenth Amendment to the United States Constitution. *Id.* at 7. In the portion of the required form complaint for setting forth the facts that support Count II, Plaintiff has written only "see attached for supporting facts." *Id.* (capitalization normalized). Count III asserts the violation of the Equal Protection Clause of the Fourteenth Amendment and similarly directs the reader to "see attached for supporting facts." *Id.* at 8 (capitalization normalized). The attached page alleges the facts set forth above in support of Count I, as it appears to be a continuation of that section of the form and is not otherwise labeled. As relief, Plaintiff seeks $50,000.00 from each Defendant in "[p]unitive damages, [monetary] damages, and any other damages this Court deems [just] and [f]air . . . ." *Id.* at 9.

---

[3] Plaintiff also attached to the complaint parts of two orders issued by the Pawnee County District Court related to Plaintiff's state petition for writ of habeas corpus under K.S.A. 60-1501, which appears to seek an appeal of the disciplinary action also at issue in the 42 U.S.C. § 1983 action currently before this Court. (Docs. 1-1 and 1-3.)

## II. Screening Standards

Because Plaintiff is a prisoner and proceeds in forma pauperis, the Court is required by statute to screen his complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes the pro se complaint and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

## III.   Discussion

This matter is subject to dismissal in its entirety because the complaint (Doc. 1) fails to state a plausible claim for relief against any Defendant. "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009) (unpublished) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Conclusory allegations of involvement are not sufficient. *See Iqbal*, 556 U.S. at 676.

Each of the three Counts pled in the complaint fails to state a plausible claim for relief. For ease of understanding, the Court will address the Counts in reverse order. In Count III, Plaintiff alleges the violation of the Equal Protection Clause. (Doc. 1, p. 8.) The Equal Protection Clause of the Fourteenth Amendment "'commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.'" *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

An equal protection claim may challenge legislation or the conduct of an individual." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citation omitted). The claim "may be asserted with respect to a group or a 'class of one.'" *Id.* (citation omitted). "The former is more common and concerns a 'governmental classification[ ] that affect[s] some groups of citizens differently than others.'" *Id.* (citations omitted). To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631-32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

Even liberally construing the complaint, it does not identify any other individual who is similarly situated to Plaintiff but was treated differently. Thus, Plaintiff has failed to state a plausible claim that his equal protection rights have been violated. Count III is subject to dismissal for failure to state a claim.

In Count II, Plaintiff alleges the violation of his procedural due process rights under the Fourteenth Amendment. (Doc. 1, p. 7.) Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (citation omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'...or it may arise from an expectation or interest created

by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to be housed in a particular security classification. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification").

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). In other words, Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553,

557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29); *Cardoso v. Calbone*, 490 F.3d 1194, 1197– 98 (10th Cir. 2007).

Even liberally construing the complaint and taking all well-pled facts within as true, Plaintiff does not identify the protected interest of which he was deprived without adequate procedural due process. Part of the insufficiency is due to the lack of specific facts alleged to support this claim. As noted above, in the portion of the complaint for setting forth the facts that support Count II, Plaintiff merely directs the reader to "see attached." (Doc. 1, p. 7.) But the attached page of factual allegations does not indicate which facts support Count II, and the Court will not act as Plaintiff's advocate and construct his argument for him. *See Chavez v. Huerfano County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (unpublished) ("It is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case"). Based on the complaint now before this Court, Count II is subject to dismissal for failure to state a claim.

Finally, in Count I, Plaintiff alleges conspiracy, based on Defendants' agreement to enforce a policy that kept him in segregation for a year and—for some Defendants—based on their agreement to keep him in segregation after Plaintiff attended Segregation Review Board. (Doc. 1, p. 7.) The Tenth Circuit has considered "a § 1983 conspiracy claim" as "a conspiracy to violate a right protected by § 1983." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (citations omitted). "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Id.* (citations omitted).

As explained above, neither Count II nor Count III plausibly alleges a constitutional violation. Since Plaintiff has not plausibly alleged an underlying constitutional violation, he has not stated a plausible claim for relief based on conspiracy liability. *See Hinkle v. Beckham Cnty.*

8

*Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020). Thus, Count I is subject to dismissal for failure to state a claim.

### IV.   Amended Complaint Required

For the reasons set forth above, this action is subject to dismissal in its entirety for failure to state a plausible claim on which relief can be granted. Plaintiff will be granted time in which to file a complete and proper amended complaint on the required, court-approved form that alleges sufficient facts to state a plausible claim against a named Defendant in this matter. In order to add claims or significant fact allegations, Plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. Plaintiff is advised that an amended complaint does not supplement the initial complaint; an amended complaint completely replaces the initial complaint. Therefore, any claims, Defendants, or factual allegations not included in the amended complaint will not be before the Court. Plaintiff may not refer to or incorporate by reference his initial complaint or the exhibits thereto. The amended complaint must contain all claims that Plaintiff intends to pursue in this action, including those to be retained from his initial complaint, and it must allege sufficient facts to show a plausible claim for relief against a named defendant.

Plaintiff must write the number of this case (25-3218) at the top of the first page of his amended complaint. He must allege sufficient facts to show that each defendant personally participated in a federal constitutional violation. For each Count, he must clearly identify the federal or constitutional right he believes was violated and he must state specific facts that support each alleged violation. Plaintiff may attach additional pages to the required form as necessary, but he should not use the form merely to refer the reader to attachments. He must clearly label any additional pages so that the Court and opposing parties can determine which facts support Count I, Count II, Count III, etc.

If Plaintiff fails to timely file an amended complaint, the Court will proceed on the current complaint, which will be dismissed without further prior notice to Plaintiff for failure to state a claim on which relief could be granted. If Plaintiff timely files an amended complaint, the Court will conduct the statutorily required review of the amended complaint and issue further orders as necessary.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **February 17, 2026** in which to file a complete and proper amended complaint upon the required court-approved form that cures the deficiencies identified in this order. If Plaintiff fails to do so, this action will be dismissed without further prior notice to Plaintiff. The Clerk is directed to send the appropriate form and instructions to Plaintiff.

**IT IS SO ORDERED**.

Dated January 15, 2026, in Kansas City, Kansas.

S/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**