**FILED**
**U.S. District Court**
**District of Kansas**
11/19/2026
**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RYAN CHRISTOPHER CHEATHAM,**

**Plaintiff,**

**v.** **CASE NO. 25-3218-JWL**

**TIM EASLEY, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff filed this pro se civil action under 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility, his claims relate to his incarceration at the Larned State Correctional Facility in Larned, Kansas ("LSCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On January 15, 2026, the Court entered a Memorandum and Order (Doc. 15) ("M&O") finding that this matter was subject to dismissal and granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies. Plaintiff filed an Amended Complaint (Doc. 19), and on February 19, 2026, the Court entered a Memorandum and Order (Doc. 22) ("M&O II") ordering Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the M&O II. Plaintiff filed a response (Doc. 25), and on April 3, 2026, the Court entered a Memorandum and Order (Doc. 26) ("M&O III") dismissing Plaintiff's conspiracy claim in Count II for failure to state a claim.

On May 21, 2026, the Court stayed Plaintiff's claims in Counts I and III pending resolution of his state court proceedings and ordered Plaintiff to notify the Court when his state court proceedings concluded. (Doc. 28.) The Court found that Plaintiff filed a state court habeas action under K.S.A. 60-1501 based on these same claims. *See Cheatham v. Kansas Dep't of Corr.*, Case No. PN-2024-CV-000042 (District Court of Pawnee County, Kansas). The case was filed on

December 3, 2024, and venue was transferred several times based on Plaintiff's transfers to facilities in different counties.[1] The case is currently designated as Case No. BU-2025-CV-000294 (District Court of Butler County, Kansas).

An online Kansas District Court Records Search shows that Plaintiff's state court case was dismissed on October 30, 2026. Therefore, the Court lifts the stay in this case and will now screen Plaintiff's claims in Counts I and III of his Amended Complaint. The Court's screening standards are set forth in the M&O. (Doc. 15, at 4–5.)

**I. Nature of the Matter before the Court**

As Count I, Plaintiff alleges a violation of his Fourteenth Amendment due process rights. (Doc. 19, at 12.) Plaintiff alleges that his due process rights were violated based on his disciplinary proceedings at LSCF. *Id*. at 6. Plaintiff alleges that his disciplinary hearing was terminated "due to [him] not raising [his] right hand to be sworn in, which is against Plaintiff's religious beliefs." *Id*.

Plaintiff also alleges that a policy was enforced against him without giving him prior notice of the policy. *Id*. Plaintiff alleges that the policy at issue requires a year in segregation for committing a battery on staff. *Id*. at 7. Plaintiff claims that he was not made aware of the policy prior to his conviction for battery on a staff member. Plaintiff claims that this constituted a violation of K.S.A. 75-5256(b) because all rules and regulations are supposed to be published and made available to all inmates.[2] *Id*.

---

[1] On February 12, 2025, the Pawnee County District Court entered an Order Changing Venue and the case was designated as Case No. LV-2025-CV-000040. On May 20, 2025, the state court entered another Order Transferring Venue back to Pawnee County, and the case was again designated as Case No. PN-2024-CV-000042. On November 19, 2025, the state court entered another Order Transferring Venue to Butler County, Kansas, and the case became designated as Case No. BU-2025-CV-000294.

[2] The statute also provides that it does not apply to "regulations and orders relating to emergency or security procedures." K.S.A. 75-5256(b).

Plaintiff claims that he was denied release from segregation at his Segregation Reviews. *Id*. at 8. He claims that the Segregation Review Board collectively decided that he had to stay in segregation for one year based on the policy regarding battery on a staff member. *Id*. Plaintiff alleges that his appeal of the conviction was remanded for clarification of the record on October 30, 2024, and was not upheld until July 25, 2025. *Id*. at 7. Plaintiff claims that Defendants took the position that his DR was upheld despite the 9-month delay and there being no proof of clarification of the record. *Id*.

Plaintiff claims that he is not challenging his housing location during segregation, but rather he takes issue with not being made aware of the policy in violation of K.S.A. 75-5256(b). *Id*. at 9. Plaintiff states "[h]ow can I avoid sanctions without knowing the possible penalty." *Id*. He is also challenging the 9-month delay in receiving a ruling on his appeal of the DR, "with no proof of any clarification of the record." *Id*. at 9–10. Plaintiff alleges that the guidelines in K.A.R. 44-13-402, K.A.R. 44-13-404, K.A.R. 44-13-406, K.A.R. 44-13-506, and K.A.R. 44-13-704 were not followed. *Id*.

As Count III, Plaintiff alleges a violation of his freedom of religion rights under the First Amendment. *Id*. at 14. In support, Plaintiff alleges that Officer Wyman terminated the disciplinary hearing when Plaintiff failed to raise his right hand to be sworn in. *Id*. Plaintiff alleges that Megan Davis upheld his conviction after she was informed of what happened in the hearing. *Id*. Plaintiff argues that he was not in a court of law, and that he "is a Muslim and it goes against his religious beliefs." *Id*. at 11. Plaintiff argues that there is nothing in K.A.R. 44-13-403 that states that an inmate must be sworn in. *Id*.

Plaintiff names as Defendants: LSCF Warden Tim Easley; KDOC Secretary of Corrections Jeff Zmuda; LSCF Classification Administrator (fnu) Byrum, LSCF Unit-Team

Manager Travis Getty; Facility Management CMII Megan Davis; LSCF Deputy Warden Thomas Loomis; LSCF EAI staff members (fnu) Corey and Miranda Schmidt; Major (fnu) Graham at LSCF; LSCF mental health provider (fnu) Uing; LSCF Disciplinary Hearing Supervisor (fnu) East; LSCF Sort Officer and Unit Team Shawn Porkorski; LSCF Master Sergeant and Hearing Officer (fnu) Wyman; LSCF Captain (fnu) Bieberle; and LSCF Lt. (fnu) Lines. For relief, Plaintiff seeks $500,000 in punitive damages. *Id*. at 15.

**II. Discussion**

**A. Count I – Due Process**

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (quoting *Sandin*, 515 U.S. at 484, 487).

The Court found in the M&O II that Plaintiff failed to show that his placement in segregation constituted an atypical and significant hardship in relation to the ordinary incidents of prison life, and that any loss of privileges that he received failed to create a protected liberty interest. (Doc. 22, at 4–5.) The Court also found that Kansas has not created a liberty interest through state regulations; and that violations of state law or prison regulations do not provide a

cause of action under § 1983. *Id.* at 5–6. Plaintiff's response failed to address any of these findings.

The Court also found in the M&O II that Plaintiff failed to allege that his disciplinary proceedings resulted in the loss of good time credit or otherwise affected the duration of his sentence. In his response, Plaintiff alleged that he did lose good time credit based on his disciplinary proceedings. (Doc. 25, at 2.) He attaches his Good Time Award Record for the period from August 18, 2024 to December 18, 2024. (Doc. 25–1). The Record shows that no Good Time Credits were forfeited, but that the 23 days of Good Time Credit that would have accrued during that period were withheld due to the following Disciplinary Convictions during the review period:

> 09/04/2024 D 2024-09 00816 | A 1 | 312D
> 09/07/2024 D 2024-09 00829 | A 1 | 105B
> 09/07/2024 D 2024-09 00827 | A 1 | 324
> 09/08/2024 D 2024-09 00834 | A 1 | 105B

*Id.* at 1.

"The federal constitution does not give plaintiff a right to good-time credits." *Stickle v. Austin*, 2017 WL 193171, at *6 (D. Kan. 2017). This Court held in *Stickle* that:

> Kansas law gives plaintiff the right to good-time credit, however, and so his "interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." [*Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)]. But before the Due Process Clause can apply, plaintiff must have earned or been awarded good-time credits. *See Searcy v. Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002) (concluding that withholding the opportunity to earn good-time credits did not violate the Due Process Clause because KDOC was under no obligation to give the prisoner good-time credit); *see also Hardaway v. Larned Corr. Facility*, 238 P.3d 328, 330 (Kan. Ct. App. 2010) ("[In Kansas,] a prisoner has no protected liberty interest in good-time credits not yet earned or awarded." (citation omitted)). This is so because Kansas law does not promise plaintiff good-time credits. *Searcy*, 299 F.3d at 1226. Instead, it merely allows plaintiff

the opportunity to earn good-time credits. *Id.*

*Id*.

Therefore, the loss of the potential to earn credits because of a prison rule violation does not implicate due process concerns. Plaintiff has not alleged that he lost *earned* good-time credits, as opposed to the potential to earn credits. In dismissing Plaintiff's state court case, the state court likewise found that Plaintiff did not lose any earned good time credit.[3] *See Cheatham v. Kansas Dep't of Corr.*, Case No. BU-2025-CV-000294, October 30, 2026 Order (District Court of Butler County, Kansas) ("The court considers exhibits H & I filed by defendant and determines that there is no indication that good time credits previously earned were taken away. Rather Cheatham was not allowed to earn additional good time credit. Cheatham has suffered no loss of a protected interest."). Plaintiff has failed to show a protected liberty interest. Plaintiff must show good cause why his due process claim should not be dismissed for failure to state a claim.

**B Count III – First Amendment**

Plaintiff alleges in Count III that his First Amendment right to freely exercise his religion was violated when his disciplinary hearing was terminated based on his refusal to raise his hand to be sworn in. The only support Plaintiff provides is his assertion that he was not in a court of law, and that he is a Muslim and it goes against his religious beliefs. However, in Plaintiff's attached grievance, he claims that the hearing officer terminated his hearing based on Plaintiff's refusal to participate. (Doc. 19–1, at 2.) Plaintiff claims in the grievance that this is a lie because he "raised [his] hand like she ask[ed]." *Id.*

[3] Plaintiff alleged in his state habeas action that his due process rights were violated in the same disciplinary hearing that is the subject of his claims in the instant case before this Court.

"To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). Our Circuit has articulated the following test to determine when the government places a substantial burden on a plaintiff's free exercise of religion:

> The government substantially burdens a person's religions exercise ... when it (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."

*Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).

The Court found in the M&O II that based on Plaintiff's grievance, it is not clear whether or not Plaintiff raised his right hand at the disciplinary hearing. (Doc. 22, at 7–8.) Plaintiff provided no factual support as to why raising his hand to be sworn in violated a sincerely held religious belief. Plaintiff merely argues that there is nothing in K.A.R. 44-13-403 that states that an inmate must be sworn in. However, the regulation provides that "[t]he hearing officer shall rule on all matters of evidence. Strict rules of evidence, as used in a court of law, shall not be required, but the hearing officer shall exercise diligence to admit reliable and relevant evidence and to refuse to admit irrelevant or unreliable evidence." K.A.R. 44-13-403(j). In addition, K.A.R. 44-13-106 provides that:

> (a) The warden, a deputy warden, the disciplinary administrator appointed pursuant to K.A.R. 44-13-105, and those persons serving as hearing officers at the facility disciplinary hearings shall be authorized to administer oaths to witnesses in those proceedings.
> (b) Oaths shall be administered in a form and a manner that are in accordance with K.S.A. 54-101 et seq., and amendments thereto.

K.A.R. 44-13-106(a) and (b). K.S.A. 54-103 provides that "[a]ny person having conscientious scruples against taking an oath, may affirm with like effect." K.S.A. 54-103.[4]

The Court found in the M&O II that Plaintiff provided no details as to his sincerely held religious belief, what was objectionable, or whether he requested or was offered any alternatives such as affirmation. (Doc. 22, at 8.) The Court ordered Plaintiff to show good cause why his First Amendment claim should not be dismissed for failure to state a claim. *Id.*

In his response, Plaintiff argued that he was asked to raise his right hand and swear under oath at his disciplinary hearing. (Doc. 25, at 2.) Plaintiff claims that he refused due to the "Complete Hadith which is a guide to Islamic teachings, Book 78, Oaths and Vows (618–698)." *Id.* Plaintiff argues that page 647 provides that "whoever swears by a religion other than Islam is as he says," and page 667 provides that "the biggest sins are: to join others in worship with Allah." *Id.*

Plaintiff claims that "Officer Wayman never made clear to what God I am swearing to, and it is forbidden practice for me to join others with Allah, as a Muslim." *Id.* Plaintiff claims that he "still raised his hand without knowing who he was swearing to help me God, and what God, and she still terminated my hearing, also Plaintiff stated this wasn't the court of law." *Id.* at 3. Plaintiff has attached his grievances to his Amended Complaint. None of his grievances mention a violation of his right to practice his religion. *See* Doc. 19–1, at 1–4.

Plaintiff has failed to show that officials substantially burdened a sincerely held religious belief. Nothing suggests that Plaintiff was required to take any particular oath. He states that he

---

[4] The Federal Rules of Evidence include a similar provision. *See* Fed. R. Evid. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience."); Advisory Committee Note to Federal Rule of Evidence 603 ("This rule is designed to afford the flexibility required in dealing with religious adults, atheists, conscientious objectors, mental defectives, and children.").

was unsure of what he was swearing to, and he does not claim that he asked for any accommodation based on his religious beliefs. Plaintiff must show good cause why his First Amendment claim should not be dismissed for failure to state a claim.

**III. Response Required**

Plaintiff is required to show good cause why the remaining claims in his Amended Complaint should not be dismissed for failure to state a claim. Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS THEREFORE ORDERED** that the stay in this case is lifted.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **December 21, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims in Counts I and III of his Amended Complaint should not be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

**Dated November 19, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**